J-S75029-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: A.B., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.B., A MINOR | No. 1093 EDA 2014 |

Appeal from the Dispositional Order March 7, 2014
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-JV-0004814-2012

| | |
|---|---|
| IN THE INTEREST OF: A.B., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.B., A MINOR | No. 1094 EDA 2014 |

Appeal from the Dispositional Order March 7, 2014
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-JV-0004815-2012

BEFORE:  ALLEN, J., LAZARUS, J., and MUNDY, J.

DISSENTING MEMORANDUM BY LAZARUS, J.:  **FILED DECEMBER 23, 2014**

I respectfully dissent.  Recognizing the broad discretion granted to juvenile courts in fashioning dispositions, the instant case does not represent a manifest abuse of discretion where Judge Dougherty carefully considered the testimony presented by the Commonwealth and defense and determined

that out-of-home placement was absolutely necessary for A.B.'s rehabilitation in light of his transgressions and past history. The court concluded that, based on the testimony, placement in a state facility was consistent with the protection of the public as well as A.B.'s needs. 42 Pa.C.S.A. § 6301. While A.B. is undoubtedly an intelligent young man, probation has not been the rehabilitative solution to curb his transgressions.

At A.B.'s revocation hearing, A.B.'s probation officer, Juan Rodriguez, testified that since receiving the case, A.B. has tested positive for drugs one time, he has been truant from school, had a summary arrest for jumping a subway turnstile, and has had curfew issues. N.T. Probation Revocation Hearing, 3/7/2014, at 3. Despite these issues, Officer Rodriguez also testified that A.B. is extremely gifted, receives all A's and B's in high school, and has tested negative for all substances after the January 2014 positive test. *Id.* The Officer recommended that he be placed on G.P.S. with area restrictions, attend school with no unexcused absences or lateness, and be subject to random drug screenings. *Id.* at 5.

Police Officer Matthew York, of the South Gang Task Force, testified at the revocation hearing that he had identified A.B. as being part of a gang. *Id.* at 8. Specifically, Officer York personally observed A.B. consistently hanging out with gang members, was present when A.B. filmed a rap video promoting gang violence, and stated that A.B. is self-identified on social media as a "Jungle Boy," one of the violent gang factions in the area of 27th Street in the South Division. *Id.* at 8-9.

At the revocation hearing, the juvenile judge gave A.B. the opportunity to take responsibility for his missteps and admit his association with gang members. However, not only did A.B. deny his involvement in the burglary and RSP for which he had been originally convicted, but he testified that he had never been a part of any gang. In response to his dishonesty in the presence of the court, the juvenile judge stated:

> You have already been convicted of [burglary and RSP]. That is over and done with. And the fact that you keep lying to me, after somebody heard your story, and convicted you, only proves to me that I have to keep you locked up for a long time.
>
> Here's the deal, I have been trying to be nothing but honest and straight with you, and I have given you every opportunity. You have done nothing but lie to me. And I just opened the door and you had to say that you weren't there, after you just heard that you were convicted of it and that is what you are in front of me for. Not a problem. I've heard enough.
>
> Commit to the State for secure placement. You are going to learn. You are a very intelligent guy but it is not going to be used for corruption, crime or injury. You had the opportunity to walk the straight and narrow. The first person you bumped into was me. And now, I am taking you off the streets and I am placing you in the most secure facility I have for juveniles.
>
> Now, so you understand, I could put you away for four years. *I will work that down depending on how well you behave, how good [sic] you do in school and how you decide to change your mind.* But more importantly, it is going to start with your honesty. All you had to do was tell me for real. You disrespect your sister, you disrespect your Grandfather, in front of them in a packed courtroom.

N.T. Probation Revocation Hearing, 3/7/14, at 20-21 (emphasis added).

It is well established that the hearing judge sits as the finder of fact, *In the Interest of D.S.* 37 A.3d 1202 (Pa. Super. 2011), and the weight to

be assigned the testimony of the witnesses is within the exclusive province of the fact finder. *Id.* In that regard, Judge Dougherty demonstrated awareness of A.B.'s prior history (including treatment, supervision, rehabilitation and welfare), received detailed information regarding A.B.'s prior criminal conviction leading to his probationary sentence, heard sufficient testimony upon which to make an informed and reasoned probation violation sentencing decision, and observed first-hand A.B.'s unwillingness to be honest with the court.

While the majority correctly acknowledges that the juvenile court had "available various options for Appellant's disposition," Majority Memorandum, at 13, the court was more than clear that it would "work down" A.B.'s juvenile placement based upon his behavior, performance in school and honesty. N.T. Probation Revocation Hearing, 3/7/14, at 20-21. A.B. had been adjudicated delinquent for RSP, conspiracy and burglary; probation simply did not rehabilitate him. Accordingly, I would affirm the trial court's dispositional order revoking A.B.'s probation and committing him to a state juvenile facility.